STATE OF VERMONT

ENVIRONMENTAL COURT

| Appeal of Green Meadows | } | Docket No. 208-12-01 Vtec |
| Center, LLC | } | |
| | } | Docket No. 152-9-01 Vtec |
| Appeal of Tierney, et al. | } | |
| | } | |

Partial Decision and Order Categorizing the Uses proposed in the PUD Applications

The Court has before it three appeals cases involving the same property in Wilmington, Vermont. Docket No. 208-12-01 Vtec is an appeal from the Planning Commission's denial of approval of a Planned Unit Development (PUD) for the property. Docket No. 152-9-01 Vtec is an appeal from the ZBA's grant of conditional use approval (Application #844) for the uses proposed in connection with the Planned Unit Development. Docket Nos. 208-12-01 Vtec and 152-9-01 Vtec have been consolidated with each other.

Docket No. 179-10-99 Vtec is an appeal of a 1999 conditional use permit (Application #803) issued by the ZBA for the property. In connection with that appeal, the Court ruled in November 2000 on summary judgment that an even earlier conditional use permit, to operate a 'community center' on the property in lieu of the former residential school, was issued in 1998, was not appealed, and became final; that is, that Applicant holds a permit to operate at least to the extent that the 1998 permit remains in effect[1]. That permit provided that only the 'large barn' building was approved for the community center use, and only for the five uses then proposed by Applicant: 1) day care and essential early education; 2) dance classes; 3) office space; 4) two staff members providing 'assistance to families with special needs'; and 5) aerobics classes, each with specified hours of operation. What remains for determination on the merits of Docket No. 179-10-99 Vtec is whether or not the 1999 amendment application should be granted. It was put on hold while the Applicant applied for approval under the newly-adopted PUD provisions in the zoning ordinance; that application resulted in the two 2001 appeals.

In each of these cases Michael and Ellen Gilberg now represent themselves; Patricia Tierney, John Scott, Louis Beaudette and Cynthia Beaudette are represented by Robin L. Stern, Esq.; and the Town of Wilmington is represented by Richard M. Gale, Esq. Applicant Green Meadows Center, LLC, and two additional appellants: Southeast Vermont Community Action, Inc. and The Community Alliance are represented by Richard D. Perra, Esq. Two citizens of Wilmington, Jennifer Fitzgerald and Clifford Duncan, were dismissed as interested parties from these appeals, but continue to receive courtesy notices of the proceedings, as does Mary Tursi. Because the Applicant and related parties are appellants in the most recent case, and are appellees in the two earlier cases, we will continue to refer to the parties as the Applicant and the 'Neighbors.'

In connection with Docket No. 179-10-99 Vtec, Applicant argued that all of the proposed uses proposed should be considered as allowed within the 'community structure' subcategory of 'group service use' because they will be operated by a not-for-profit entity[2]. They argued,

essentially, that a 'community structure' may house any use, so long as it housed in a structure operated by a community or non-profit organization. However, the Court specifically ruled that the "community structure" group service use category may not be used as an umbrella to house other than "group service uses," and that it may not be used to house other types of uses not otherwise allowed in the particular zoning district. The Court reasoned that such an interpretation would make surplusage of the use categories established by the zoning ordinance. That is, if a commercially-owned automotive garage would not be permitted in a residential zoning district, an automotive garage run by a church to rehabilitate donated vehicles also should not be allowed to be established a residential zoning district. Similarly, if a commercial banquet hall could not be established in a residential zoning district, a banquet hall run by a fraternal organization in a residential district should not be allowed to be rented out to non-members. It is the nature of the use, not the ownership or management of the use, that governs. See In re Baptist Fellowship of Randolph, Inc. 144 Vt. 636, 481 A.2d 1274 (1984).

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, only on the limited issue of defining the uses applied for in the PUD proposal before the Court in Docket Nos. 152-9-01 Vtec and 208-12-01 Vtec. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, and the written memoranda and proposed findings, the Court finds and concludes as follows as to this limited issue only.

The Neighbors argue that some of the uses proposed for this project are not allowed in the district; that is, that they are neither a permitted nor a conditional use, and therefore cannot be considered as an included use within a Planned Unit Development. We take each proposed use in turn.

We first note that both parties have somewhat confused the question of whether a particular use is allowed under the unappealed 1998 permit, with the question of whether it is an allowed use in the residential district. The question of whether a particular use is an allowed use in the residential district in turn determines whether it can be considered within a multiple-use PUD. If it is not an allowed use in the district, it cannot be considered as part of the PUD, even though it may still be undertaken under the terms of the unappealed 1998 permit, to the extent that permit is still in effect. In this decision we merely determine if it falls within a permitted or conditional use in the district, and do not address whether or to what extent it was allowed under the 1998 permit. We also do not address whether any particular use should be approved as part of the PUD; we only address whether it can be considered for approval as part of the PUD.

Day care and essential early education - Appellants argue that this is an individual service use, not a group service use. However, although a fee-for-service may be charged per child, the service is provided in a group setting, similar to that of a day care or nursery school run by a church, a public school, or a day care home, or a kindergarten provided by a public school. If operated as a non-profit organization, it (and any accessory food preparation and service) falls within the use category of "community group service" use under § 7(A)(1)(a) and therefore may be considered as part of a PUD in the residential district.

Senior center - As described by the Applicant, the proposed senior center involves a gathering place, group activities, and accessory meals served to the participants, all in a group setting. If operated as a non-profit organization, it (including any accessory food preparation and service) falls within the use category of " community group service" use under § 7(A)(1)(a) and therefore may be considered as part of a PUD in the residential district.

Youth activities - As described by the applicant, the proposed after-school activities, including after school and evening classes, are provided in a group setting, as in a school or a library. If operated as a non-profit organization, it falls within the use category of " community group service" use under § 7(A)(1)(a) and therefore may be considered as part of a PUD in the residential district.

Public meeting room - Similarly to a public meeting room made available to community groups by a library or school or church, if operated as a non-profit organization, it falls within the use category of " community group service" use under § 7(A)(1)(a) and therefore may be considered as part of a PUD in the residential district.

Dance, yoga and aerobics classes - As described by the Applicant, while these classes are a group service, they do not fall within either allowed group service use category in § 7(A)(1). That is, they are not non-commercial in nature, as a fee will be charged for the classes, and they do not fall within the ' outdoor recreation' category of subsection (b). As it does not fall into an allowed use category in the residential district, it therefore may not be considered as part of a PUD in the residential district. (We recognize that the Applicant also argues that these classes were approved in the 1998 permit).

Computer Lab and ' Microbusiness Lab' - If by this category Applicant means to supply equipment such as computers, printers and copiers for community use, as in a public library, then, similarly to the public meeting room, if operated as a non-profit organization, it falls within the use category of " community group service" use under § 7(A)(1)(a) and therefore may be considered as part of a PUD in the residential district. However, if Applicant means to provide any classes or individualized instruction or business consultation, this use category may have to be analyzed differently. Please see the cautionary note in the final full paragraph below.

Kitchen and Dining Room - To the extent that the kitchen and dining room are used to provide meals as an accessory to the allowed on-site uses, they may be considered within a PUD in the residential district. On the other hand, to the extent the kitchen is used to prepare meals to be served off-site, it resembles a catering business, which is only an allowed use in the commercial district, and therefore cannot be considered within a PUD in the residential district.

Medical ' Clinic' - To the extent that the medical ' clinic' room is intended to be operated as a professional office, with one service provider serving one patient at a time, it falls within the allowed use category of ' professional office' and is an allowed use that may be considered as part of a PUD in the residential district. However, to the extent that it is a larger commercial

operation, it may be precluded from the residential district. Applicant's testimony did not establish the proposed uses for this space; see the cautionary note below.

Office space for counselors and other 'social service' providers - Similarly to the medical 'clinic,' if this office is intended to be operated as a professional office, with one service provider serving one patient at a time, it falls within the allowed use category of 'professional office' and is an allowed use that may be considered as part of a PUD in the residential district. However, to the extent that it is a larger commercial operation, it may be precluded from the residential district. Applicant's testimony did not establish the proposed uses for this space; see the cautionary note below.

Dormitory with overnight accommodations for 6 persons - As described by the Applicant, this use is an "establishment letting rooms" entitled to be reviewed as a conditional use in the residential zoning district under § 7(B)(2), and therefore may be considered as part of a PUD in the residential district.

Classroom - If this classroom is within the dormitory building and is intended to be used for classes given for a fee by one or more residents of the dormitory, then it would be analyzed similarly to the dance, yoga, and aerobics classes discussed above. If it is intended to be used for another purpose that can be categorized as a professional office or studio, it may be considered as part of a PUD in the residential district; however Applicant's testimony did not establish the proposed uses for this space. Again, see the cautionary note below.

Artist's Studio and Workshop - If this space is intended to be used as a professional office or studio for the temporary residents, and not for any retail use or any classroom instructional use, it may be considered as part of a PUD in the residential district. However, Applicant's testimony did not clearly establish the proposed uses for this space; see the cautionary note below.

6-unit Senior Citizen Residence - The October 2001 order ruled that this proposed use, and the dining area and kitchen if accessory to that use, is a "multiple family dwelling" entitled to be reviewed as a conditional use in the Residential zoning district under § 7(A)(2), and that therefore it may be considered as part of a PUD in the residential district. However, at the hearing the Applicant described this use as 'senior assisted living and support staff offices.' To the extent that the proposal is more like a nursing home with support services than like a multiple family dwelling of separate apartments, it may be precluded from the residential district, and therefore would not be able to be considered within a PUD in the residential district. The Applicant will have to further define the operation of this use; see the cautionary note below.

Outdoor recreation - The tennis court and any other similar outdoor recreation such as soccer fields or basketball courts fall within the outdoor recreation group service use, allowed in the district as a conditional use, whether or not it is operated by a commercial entity, and therefore may be considered as part of a PUD in the residential district.

Agriculture - Agriculture is a permitted use in the district and therefore may be considered as part of a PUD in the residential district.

<u>Storage barns</u> - The storage barns are accessory uses only if used for storage for the other allowed on-site uses. Storage for off-site organizations or uses cannot be accessory to an on-site use, whether or not those off-site uses or organizations are non-profit. Rather, such storage would be similar to a warehouse or self-storage unit use, which does not fall into an allowed use category in the residential district, and therefore may not be considered as part of a PUD in the residential district.

<u>Cautionary note:</u>

We must emphasize to the parties that many of the proposed uses appear to remain relatively amorphous as presented by the Applicant. While the Applicant has described[3] the proposed uses sufficiently for the Court to determine that many of them may be <u>considered</u> for approval within a PUD, at the merits hearing the Applicant will have to be much more specific about the nature of the uses, their hours, numbers of participants, proposed conditions, numbers of vehicles, parking, and, for the nonprofit group service uses, the nonprofit organization engaging in the use. In this regard, if the Applicant proposes to incorporate its Act 250 permit into its PUD application, it must do so explicitly: the conditions and requirements of the Act 250 permit are not automatically incorporated, even if the Applicant intends to be bound by both permits.

The merits of all three of these matters remain scheduled for October 3 and 4, 2002. We will hold a telephone conference on September 3 or 4, 2002, to discuss the parties' readiness for trial.

Done at Barre, Vermont, this 7th day of August, 2002.

_____

Merideth Wright
Environmental Judge

Footnotes

1. The question of whether the 1998 permit remains in effect at the present time is to be briefed on a schedule that will put it under advisement with the Court by the beginning of September 2002.

2. Although Applicant is a for-profit entity, Applicant has stated that the project site will be owned by and the project will be operated by Southeastern Vermont Community Action, Inc. (SEVCA), a non-profit corporation, and by the Community Alliance, which appears to be some type of unincorporated association whose members are otherwise unidentified. To date, neither of these entities has applied as an applicant for the permits before the Court, although all three do appear as co-applicants on the related Act 250 Land Use Permit.

3. We also note that the PUD application (as distinct from the site plan) does not appear to have been presented in evidence to the Court, although the various conditional use applications have been presented in evidence.